IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK L. PERRY,

      Plaintiff,   No. 2:10-cv-3223 KJN P

   vs.

K. DICKINSON, et al.,

      Defendants.   ORDER

_____/

I. Introduction

      Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983. All parties have consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). This case is proceeding on plaintiff's amended complaint against defendants Hemp and Chandless (claim one), and Cornett and Read (claim three). (Dkt. Nos. 23; 27.) Pending before the court is defendants' motion to dismiss these claims based on plaintiff's alleged failure to first exhaust administrative remedies, and failure to plead facts sufficient to state a claim for relief under Fed. R. Civ. P. 12(b)(6). After carefully reviewing the record, the undersigned concludes that defendant's motion to dismiss is granted based on plaintiff's failure to first exhaust administrative remedies in connection with his first and third claims, and this action should be dismissed.

II. Plaintiff's Amended Complaint

Plaintiff's claims arise from a fight among inmates at the Yuba County Jail, including plaintiff, on December 25, 2009.  In his first claim, plaintiff contends that defendants Hemp and Chandless failed to place plaintiff in protective custody to protect plaintiff from an attack by other inmates on December 25, 2009, allegedly violating plaintiff's Eighth Amendment rights.  (Dkt. No. 13 at 5-6.)  In his third claim, plaintiff alleges that defendants Cornett and Read allegedly retaliated against plaintiff by placing him in administrative segregation because of a complaint he filed challenging the jail policy.  (Dkt. No. 13 at 7.)

III. Motion to Dismiss - Failure to Exhaust

Defendants claim that plaintiff failed to first exhaust his administrative remedies as to plaintiff's remaining claims.  Plaintiff filed an opposition; defendants filed a reply.

    A. Legal Standard re Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.

1    The fact that the administrative procedure cannot result in the particular form of relief requested
2    by the prisoner does not excuse exhaustion because some sort of relief or responsive action may
3    result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes
4    of exhaustion requirement include allowing prison to take responsive action, filtering out
5    frivolous cases, and creating administrative records).  The Supreme Court has cautioned courts
6    against reading futility or other exceptions into the PLRA exhaustion requirement.  See Booth,
7    532 U.S. at 741 n.6.
8                  A prisoner need not exhaust further levels of review once he has either received
9    all the remedies that are "available" at an intermediate level of review, or has been reliably
10   informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d
11   926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief
12   remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief
13   remained available, whether at unexhausted levels or through awaiting the results of the relief
14   already granted as a result of that process.  Id., at 936-37.
15                 As noted above, the PLRA requires proper exhaustion of administrative remedies.
16   Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an
17   agency's deadlines and other critical procedural rules because no adjudicative system can
18   function effectively without imposing some orderly structure on the course of its proceedings."
19   Id. at 90-91.  Thus, compliance with grievance procedures is required by the PLRA to properly
20   exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or
21   otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.  When the
22   rules of the prison or jail do not dictate the requisite level of detail for proper review, a prisoner's
23   complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought."
24   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  This requirement is so because the
25   primary purpose of a prison's administrative review system is to "notify the prison of a problem
26   and to facilitate its resolution."  Griffin, 557 F.3d at 1120.

1    Non-exhaustion under § 1997e(a) is an affirmative defense which should be
2 brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil
3 Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court
4 may look beyond the pleadings to determine whether a plaintiff exhausted his administrative
5 remedies.  Id. at 1119-20.

      B.  Analysis re Exhaustion

7    At the time the underlying claims accrued, plaintiff was housed in the Yuba
8 County Jail.  Defendants provided the declaration of Jerry Read, Undersheriff for the Yuba
9 County Sheriff's Department, who described the grievance procedure for prisoners held in the
10 Yuba County Jail, and submitted a copy of the Inmate Handbook that is provided to each inmate
11 upon arrival. (Dkt. No. 35-2 at 12.)

        i.  Eighth Amendment Claim (First Claim)

13    In his first claim, plaintiff contends that defendants Hemp and Chandless failed to
14 protect plaintiff from a prison attack on December 25, 2009, despite plaintiff's "repeated requests
15 orally and in writing[,] pleading to protect [him] from the white supremacists and their continual
16 threats to do [plaintiff] harm." (Dkt. No. 13 at 3-4.)  Plaintiff avers he requested "protective
17 custody" just two days before the assault, but his request was denied.  (Id. at 3.)  Plaintiff alleges
18 that he "made known to the captain that all African Americans [were] endangered in D-pod."
19 (Id. at 4.)

20    In response to a previous court order, plaintiff stated that he exhausted the Eighth
21 Amendment claim by a grievance filed on or about October 1, 2009.  (Dkt. No. 19 at 2.)

22    Undersheriff Read declares that plaintiff did not file a grievance on October 1,
23 2009, and did not file any grievance in either September or October of 2009.  (Dkt. No. 35-2 at
24 12.)  Defendants contend that even if plaintiff had submitted a grievance on this claim in October
25 of 2009, it could not have exhausted plaintiff's claim that defendants failed to protect plaintiff
26 from an attack that occurred on December 25, 2009, because the attack had not yet happened.

4

(Dkt. No. 35-1 at 4.) Defendants' objection as to timing is well-taken.

Plaintiff now claims three other grievances exhausted his administrative remedies as to the Eighth Amendment claim. Defendants argue that none of these grievances addressed plaintiff's Eighth Amendment claim, and also contend a fourth grievance as to housing did not address the Eighth Amendment claim. The court addresses these grievances seriatim.

### a.  December 10, 2009 Grievance

Plaintiff now claims that on December 10, 2009, he submitted a grievance alleging "unconstitutional segregation," and "Yuba County Jail was creating racial tension." (Dkt. No. 43 at 3, 7.) Plaintiff states he requested that Yuba County Jail stop housing white supremacist gang members in the pod of their choice (D-pod), and to place violent, or potentially violent, gang members in administrative segregation. (Dkt. No. 43 at 3.)

Defendants renew their contention that plaintiff could not exhaust his Eighth Amendment claim by filing a grievance pre-dating the incident at issue here, which occurred on December 25, 2009. But even if plaintiff could do so, defendants contend that the December 10, 2009 grievance does not address any of the conduct giving rise to plaintiff's Eighth Amendment claim. (Dkt. No. 44 at 3.)

The December 10, 2009 grievance challenged the Yuba County Jail's policy of segregating black inmates from white inmates. (Dkt. No. 43 at 90.) Plaintiff argued that the white supremacists needed to be housed in a separate pod, just as the Latino gang members, so that the white inmates who have no problem housing with black inmates could be housed in integrated housing. Plaintiff claimed that if the problem was not dealt with, he was preparing a "lawsuit to silence the segregationist living." (Dkt. No. 43 at 91.) Contrary to plaintiff's argument in his opposition, plaintiff did not identify the gang members as "violent or potentially violent." (Dkt. No. 43 at 90-91.)

Review of the December 10, 2009 grievance reflects plaintiff challenged the housing policy of the jail, was concerned that it sponsored racism, and suggested that the jail

officials were allowing the white supremacists to dictate their housing.  He argued that the white supremacists – "these racist men" -- should be housed in a segregated unit.  (Id.)  Plaintiff then mentioned hearing about an African American man who was attacked by three white males "a couple of years ago."  He stated that these "hate crimes" were "documented and must also be considered."  (Dkt. No. 43 at 91.)  Despite this brief reference in the two page grievance, the focus of plaintiff's grievance was his effort to seek a change in housing policy.  Plaintiff did not allege his safety was at issue, or that defendants or unidentified jail staff members were acting in ways that put plaintiff's safety at risk.  He did not include any allegations that the white supremacists where threatening plaintiff, and did not seek protective custody housing.  Thus, the passing reference to an incident that occurred two years prior was not sufficient to put prison officials on notice that plaintiff's safety was at risk.

For all of the above reasons, the December 10, 2009 grievance cannot serve to exhaust plaintiff's Eighth Amendment claim that defendants failed to protect plaintiff from a December 25, 2009 attack.

b.  March 13, 2010 Grievance

Plaintiff claims that in his March 13, 2010 grievance, he "clearly address[ed] the entire event that happen[ed] on December 25, 2009.  (Dkt. No. 43 at 8.)  However, the subject of the March 13, 2010 grievance was marked "harassment," and plaintiff alleged that Deputy Sheriff Johnson "repeatedly" asked plaintiff where his sheet was, and that plaintiff complained to Sgt. Bell that it was cold and asked where the heat was.  (Dkt. No. 43 at 48.)  Plaintiff claimed that cold air was an issue for the last month in the pod, and that the jail was kept cold to keep the inmates from being violent.  (Id. at 48-49.)  Plaintiff complained that Sgt. Bell was racist in her dealings with Johnson and plaintiff, and plaintiff noted that Sgt. Bell was the sergeant on duty at the time of the December 25, 2009 incident.  (Id. at 50.)  Plaintiff alleged that Sgt. Bell refused to speak with plaintiff because she supported the December 25, 2009 assault, and claimed that she failed to prosecute the men who attacked plaintiff.  (Id.)  Plaintiff further complained that Sgt.

1  Bell encouraged other employees to harass plaintiff.  (Id. at 51.)  Plaintiff requested an
2  investigation into his grievance, and asked that Sgt. Bell be "reprimanded for failing to prosecute
3  the white men who stomp[ed] [plaintiff] out."  (Id.)

4      Although plaintiff mentioned the December 25, 2009 incident in this grievance,
5  the gravamen of the grievance was the temperature of his cell, and his claims as to Sgt. Bell's
6  actions and inactions, which plaintiff claimed stemmed from racism.  Plaintiff alleged no facts
7  concerning an alleged failure to protect plaintiff from the December 25 attack, and included no
8  allegations as to his purported efforts to be placed into protective custody prior to the attack, or to
9  warn jail staff about an impending attack.  This grievance is unrelated to plaintiff's failure to
10 protect claim, and therefore cannot serve to exhaust the Eighth Amendment claim.

         c.  March 3, 2010 or April 3, 2010 Grievance

12     Defendants argue that plaintiff mistakenly references Exhibit A at "DEF00089,"
13 as plaintiff's March 3, 2010 grievance.  As defendants point out, the page that is Bate-stamped
14 "DEF00089" (dkt. no. 43 at 62) is plaintiff's grievance dated April 3, 2010, and defendants argue
15 it references no facts alleged in plaintiff's Eighth Amendment claim.  Plaintiff did not identify a
16 grievance dated March 3, 2010 by page number, and the court could not locate one in plaintiff's
17 101 page filing.

18     The subject of the April 3, 2010 grievance is "no floor officer to attend our
19 needs."  (Id.)  Plaintiff stated that on December 25 he was "stomped out" by white supremacists,
20 and the "melee situation" went on for five minutes.  (Id.)  Plaintiff claimed that because there
21 was no floor office on the A-pod floor, officers had to come from "booking, another floor, or
22 from elsewhere."  (Id.)  Plaintiff alleged this was a negligent practice.  (Id.)  Plaintiff claimed that
23 Captain Chandless was "obviously understaff[ed] and [had] his officers do more things than they
24 [were] required."  (Id.)  Plaintiff stated that the "failure to have an officer on each floor in [the]
25 Yuba County Jail to protect the lives and oversee the jail is an institution policy violation."  (Id.)
26 ////

The April 3, 2010 grievance focused on understaffing. It appears that plaintiff was using the December 25, 2009 incident as an example of understaffing. However, even construing this grievance as focusing on the December 25, 2009 incident, plaintiff does not allege that defendants Hemp and Chandless or other jail staff failed to put plaintiff in protective custody prior to the incident, or that they failed to heed his alleged warnings prior to the incident. Thus, the facts alleged in the April 3, 2010 grievance did not put jail staff on notice of plaintiff's instant Eighth Amendment claim, and cannot serve to exhaust such claim.

### d. February 10, 2010 Grievance

Defendants note that on February 10, 2010, plaintiff submitted a grievance concerning housing. (Dkt. No. 35-2 at 35.) However, this grievance did not allege that prison officials failed to protect plaintiff prior to the December 25, 2009 attack, and does not include any of the facts alleged in plaintiff's Eighth Amendment claim pled here. (Id.) Rather, plaintiff complained that his assailants were allowed to remain in general population while he was placed in administrative segregation. (Dkt. No. 43 at 40.) Plaintiff also complained that his current cellmate had a cane, which could be used as a weapon. (Id.) Through this grievance, plaintiff sought a change in housing. (Id.) Thus, the February 10, 2010 grievance also did not exhaust plaintiff's Eighth Amendment claim.

Finally, plaintiff alleges that his claim cannot be dismissed for failure to exhaust "where it was unclear what [prisoners] have to do to exhaust either because the rules were not clear, or because [of] the actions or instructions of the officials . . . created confusion in a particular case, or both." (Dkt. No. 43 at 10, quoting Westefer v. Snyder, 422 F.3d 570, 580 (7th Cir. 2005).) Plaintiff alleges he was given conflicting and misleading information as to the proper procedures to fully exhaust plaintiff's claims. (Dkt. No. 43 at 10.)

However, defendants provided the declaration of Undersheriff Read, who submitted a copy of the handbook issued to prisoners at the Yuba County Jail. (Dkt. No. 35-2 at 12.) The handbook contains detailed information as to how grievances are filed and how to

proceed through the final review by the appeal panel. (Dkt. No. 35-2 at 28-29.) Moreover, plaintiff's allegations as to the misinformation or mishandling of his grievances address their handling after the initial submission of the grievance. Here, the court finds that the initial grievances did not contain the factual allegations plaintiff alleged in the second amended complaint. Thus, any future mishandling or misinformation given as to a particular grievance bears no relevance to the fact that plaintiff did not initially include the factual allegations contained in his first claim in a grievance presented to jail officials for review prior to filing in federal court.

In conclusion, the court finds that plaintiff failed to rebut defendants' evidence that plaintiff failed to exhaust his Eighth Amendment claim prior to filing this action.

### ii. Retaliation (Third Claim)

In his third claim, plaintiff alleges "retaliatory treatment for filing grievances and inmate requests" as to defendants Cornett and Read. (Dkt. No. 13 at 5.) Plaintiff claims that defendant Cornett "made a reprisal decision to move the [assailants] in this case to general population," and move plaintiff to administrative segregation. (Id.) Plaintiff alleges he was moved to administrative segregation because of his grievances challenging the jail's housing policy.

Initially, plaintiff contended that the February 10, 2010 grievance exhausted this claim. While not entirely clear, it appears plaintiff now contends that other grievances exhausted his administrative remedies as to plaintiff's retaliation claim. (Dkt. No. 43 at 15.)

#### a. February 10, 2010 Grievance

On February 10, 2010, plaintiff submitted a grievance concerning housing. (Dkt. No. 43 at 40.) However, this grievance does not allege that defendant was placed in administrative segregation in retaliation or reprisal for plaintiff's filing grievances and inmate requests. (Id.) Rather, plaintiff complained that his assailants were housed in the general population while plaintiff was placed in administrative segregation, which plaintiff stated was an

9

"insult." (Id.) Plaintiff also complained that his current cellmate had a cane, which could be used as a weapon. (Id.) Plaintiff asked to be reclassified to another housing unit, noting he only received thirty minutes of programming a day, and asked to be single-celled. (Id.)

Thus, while plaintiff appeared to complain that his housing in administrative segregation was unfair, or an "insult," plaintiff did not attribute his housing in administrative segregation to his filing of inmate grievances or requests. Rather, he placed it in the context of the December 25, 2009 assault. In any event, plaintiff did not include any facts in this grievance suggesting he was placed in administrative segregation based on the filing of inmate grievances or requests. While plaintiff did not have to use the term "retaliation," he was required to provide facts that would put jail staff on notice that plaintiff believed his placement in administrative segregation was due to the filing of inmate grievances and requests. Griffin, 557 F.3d at 1120. Plaintiff did not do so. Thus, the February 10, 2010 grievance did not exhaust plaintiff's retaliation claim.

b. April 2, 2010 Grievance

In his April 2, 2010 grievance, plaintiff identified the subject as "staff assault," and alleged that during his preliminary examination he was assaulted by Deputy Arnold. (Dkt. No. 43 at 59.) Plaintiff claimed that Deputy Arnold kicked plaintiff's chair and hurt plaintiff's neck by jerking the chair. (Id.) Plaintiff asked that Deputy Arnold be charged with misdemeanor assault. Plaintiff added, "I allowed things to die down so I wouldn't receive reprisal attacks that I'm receiving anyhow (for writing grievances)." (Id.)

This grievance does not claim that plaintiff was placed in administrative segregation based on his filing inmate grievances or requests. Although plaintiff made a passing reference to alleged reprisal attacks for writing grievances, that was not the subject matter of this grievance, and the brief mention or general allegation was not sufficient to put jail officials on notice that plaintiff believed he was placed into administrative segregation on or about December 29, 2009, due to his filing of inmate grievances or requests. Thus, the April 2, 2010 grievance

cannot serve to exhaust plaintiff's retaliation claim.

### c. December 14, 2009 Grievance

Plaintiff's opposition referenced the December 14, 2009 grievance. (Dkt. No. 43 at 15, citing Defts.' Bate-stamped "DEF 39-40.") The top of the grievance was marked "Institutional Policy violation." (Dkt No. 43 at 42.) Plaintiff alleged that other jail inmates were allowed to leave their cells on three separate occasions, but Deputy Sheriff Taylor refused to allow plaintiff to leave his cell to retrieve belongings plaintiff had left in the shower. (Id.) Plaintiff alleged Taylor permitted another inmate to return to the shower, but threatened to write plaintiff up if he attempted to do so. (Id.) Plaintiff claimed that Taylor was inciting racial tension and was "clearly showing reprisal behavior toward [plaintiff] for most recently writing a grievance alleging his failure to perform his job description." (Id.) Plaintiff also complained that Taylor was no longer allowing inmates into their cells 10 minutes after program begins. (Id. at 43.) Plaintiff stated that because he had not received a response to the grievance filed against Taylor, plaintiff would write a letter to the captain and to the sheriff, "to silence self-will behavior, reprisal acts by staff for using the grievance system, and for inciting a racial conflict." (Id.)

While the December 14, 2009 grievance addressed the issue of reprisal, plaintiff alleged facts specific to Deputy Sheriff Taylor as to an incident unrelated to plaintiff being housed in administrative segregation on or about December 29, 2009. Because this grievance pre-dated plaintiff's retaliation claim pled here, the December 14, 2009 grievance cannot serve to exhaust plaintiff's claim that he was retaliated against on or about December 29, 2009.

### d. April 1, 2010 Grievance

Plaintiff's opposition also referenced a grievance dated April 1, 2010. (Dkt. No. 43 at 15, citing Defts.' Bate-stamped "DEF 83-86.") This grievance contained the subject "staff assault," and alleged that Deputy Sheriff Arnold assaulted plaintiff while handcuffing plaintiff at his preliminary examination. (Dkt. No. 43 at 58.) The grievance contained no factual

allegations concerning the filing of grievances or inmate requests, or retaliation or reprisals.  (Id.)  Therefore, the April 1, 2010 grievance cannot serve to exhaust plaintiff's retaliation claim.

In conclusion, the court finds that plaintiff failed to rebut defendants' evidence that plaintiff failed to exhaust his retaliation claim prior to filing this action.

IV.  Motion to Dismiss - Failure to State a Claim

Because the court finds that plaintiff failed to exhaust his administrative remedies, the court need not address defendants' alternative argument.

V.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Defendants' November 10, 2011 motion to dismiss based on plaintiff's failure to exhaust administrative remedies (dkt. no. 35) is granted, and

2.  This action is dismissed without prejudice.

DATED:  June 28, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

perr3223.mtd